ARNOLD v. MANSFIELD LUMBER COMPANY.

Opinion delivered March 19, 1923.

SALES—ESTIMATE OF PRICES FOR BUILDING MATERIAL SUBJECT TO CHANGE.—Where defendant submitted an itemized bill of the material required to build a house to plaintiff, who noted prices opposite each item, and 8 days later defendant ordered a substantial portion of the bill, and from time to time ordered the balance of the material, evidence *held* to sustain a finding that there was no contract to furnish the material at any fixed price, and no obligation to furnish it except at prices current at the time of delivery; the estimate being in legal effect a price list subject to change.

Appeal from Sebastian Chancery Court, Fort Smith District; *J. V. Bourland,* Chancellor; modified.

*T. S. Osborne,* for appellant.

Appellant contracted for the lumber at specified prices, and the evidence shows she was charged much more, and judgment should be reduced accordingly.

*Daily & Woods,* for appellee.

Appellee only furnished a preliminary estimate in first instance, appellant bought other and different kinds, grades and quantities of materials, was not overcharged on any items, and received proper credit for all materials returned.

SMITH, J.   This is a suit on an account for the material to build a house on a lot owned by appellant in the city of Fort Smith, and there is involved here only the correctness of the account sued on.   When the cause came on for trial, appellant, the defendant below, admitted that all the material set out in the exhibit to the complaint had been sold and delivered to her, and had gone into her building, and that plaintiff was entitled to a lien on the house and lot for whatever amount was due, and that the only questions at issue were certain alleged overcharges on specified articles furnished and the failure to give credit for articles returned.

The important question in determining the amount for which plaintiff should have judgment is the price of the material, as there is no dispute about the quantity.

Only two witnesses testified, one being the husband of the appellant, who was her agent in the transaction; the other was Mr. Reeves, the general manager of the plaintiff company.

Reeves testified as follows: He personally sold and checked out the bill of lumber sold Mrs. Arnold, and the itemized statement thereof attached to the complaint is true and correct.   The exhibit B, introduced by Mr. Arnold, was also true and correct, the latter being a statement of account furnished Mr. Arnold in August after the material had been sold and delivered in the preced-

ing June and July. Mr. Reeves also testified that an exhibit A, introduced by Arnold, was a correct preliminary estimate of the cost of the material Mrs. Arnold would require, which witness furnished Arnold on June 9th. The material was not bought at that time, and there was a difference in the quality and quantity of material. The estimate was never referred to again, and the sales were not made thereunder. Mrs. Arnold bought two or three times as much stuff as was stated in the estimate. These estimates are furnished on request, and are not contracts. He admitted a door and window had been returned, for which credit should be allowed for $14.90. There was a controversy over 35 pieces of flooring, which witness testified were returned and credited at the price charged, and the same quantity of a better flooring later furnished at a higher price.

Mr. Arnold testified that his contractor had furnished him an itemized bill of the material that would be required to build the house, and on June 9th he submitted the bill to Mr. Reeves, who placed the price opposite each item, and on June 17th he ordered a substantial portion of the bill covered by the estimate. At the same time he also ordered 25 concrete blocks which were not in the estimate, the price of which was $5. He thereafter ordered a few extras not in the estimate, but the bill was otherwise substantially that covered by the estimate, there being only about $5 difference between the estimated price and the price charged on the articles included in the estimate. At the time witness gave the first order he paid $50 on the bill, and, while nothing was said about the prices covered by the estimate, he assumed the material was being sold in accordance therewith. A number of items were furnished throughout the month of July, and, when the bill was finally rendered in August, a higher price was charged for many of the articles than that shown on the estimate.

The first question for decision is whether Mrs. Arnold had the right to expect the material to be charged

for according to the estimate. Reeves testified that similar estimates were furnished every day, and many of them to persons who never bought any of the items priced, and that the articles delivered to Mrs. Arnold were charged at the prices current on the day of the delivery, and that nothing was said about the estimate when the material was furnished.

The majority are of the opinion that, under the facts stated, there was no contract to furnish the material at any fixed price, and no obligation to furnish it except at the prices current at the time of the delivery, for the reason that the estimate was, in legal effect, a price list, and in force only at the time made and subject to change to conform to the fluctuations in the market price.

It is the opinion of Justice HUMPHREYS and the writer that the estimate furnished should be regarded as an offer to contract, furnished for the purpose of enabling Mr. Arnold to determine whether he would buy all or any of the material covered by the estimate, and an offer which remained open for acceptance for a reasonable time, and that eight days was a reasonable time within which to accept an offer to furnish material to build a house. Inasmuch as the order was filled by the man who made the estimate, and all of the material ordered was substantially that covered by the estimate, we think Arnold had the right to assume, in the absence of notice to the contrary, that the material covered by the estimate was being furnished at the prices stated in the estimate.

The court below fixed the current prices on all the items in accordance with the testimony of Reeves, and the view of the majority approves that finding. There are, however, two errors in the account, even when stated on that basis.

The undisputed testimony shows that a bungalow door, priced at $15, and a door frame, priced at $5, were returned. Credit therefor should have been given for $20, but the credit allowed was only $14.90. Sixty-four

pieces of flooring were furnished and charged for at 4 cents, and of these 35 pieces, amounting to 163 feet, were returned and credited at 3 cents. Mr. Reeves testified that the 35 pieces of flooring returned were credited at the exact price charged, but such is not the case. The account should therefore be credited with the overcharge of a cent per foot, amounting to $1.63. Later other flooring was charged for at 5 cents per foot, but, under the views of the majority, this was not improper. Mr. Reeves testified 5 cents was the market price of the flooring at the time the last of it was furnished; the explanation was also made by Reeves that the last flooring was of a better quality. A few other items are in dispute, but in each case explanation was offered that the prices had advanced above the estimated prices, or that a better grade of material was furnished, and the lumber company has, under the view of the majority, the right to have the items covered by the estimate charged at the prices current when they were furnished; but the account as thus fixed by the court below must be credited with the items of $5.10 and $1.63, and, as thus modified, the decree of the court below is affirmed.